UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD WILLIAMS,

    Applicant,

v.                                                CASE NO. 8:22-cv-910-SDM-AEP

SECRETARY, Department of Corrections,

    Respondent.
_____/

## ORDER

    Williams applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for murder in the second degree, for which Williams is imprisoned for life with a minimum of twenty-five years. The respondent files a limited response (Doc. 10), which is supported by relevant parts of the state court record ("Respondent's Exhibit"), and argues that the application is time-barred. Williams contends that his application is timely and, alternatively, that he is entitled to the "actual innocence," "manifest injustice," and "fundamental miscarriage of justice" exceptions to the limitation. As determined below, the application is time-barred and Williams qualifies for no exception to the limitation.

**One-Year Limitation:**

    Under the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d)(1)(A), "[a] 1-year period of limitation shall apply to an application for a writ

of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." Additionally, under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

On March 26, 2008, Williams's conviction and sentence were affirmed by the district court of appeal with a written opinion. *Williams v. State*, 976 So. 2d 1197 (Fla. 2d Dist. Ct. App. 2008) (Respondent's Exhibit 12). Under Rule 9.120(b), Florida Rules of Appellate Procedure, Williams had thirty days to invoke discretionary review in Florida's supreme court because the district court of appeal issued a written opinion. *See Florida Star v. B.J.F.*, 530 So. 2d 286, 288 (Fla. 1988) (answering certified question from the United States Supreme Court that Florida's supreme court has subject-matter jurisdiction to review any decision of a district court of appeal that expressly addresses a question of law within the four corners of the opinion). Under Rule 13(1), United States Supreme Court Rules, Williams was not entitled to the ninety-day delay of the start of the limitation to petition for the writ of *certiorari* because the opinion by the district court of appeal was not by "the state court of last resort." *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) ("[B]ecause Gonzalez did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired."). Consequently, Williams's conviction became final on April

25, 2008, when the time expired to seek discretionary review in Florida's supreme court.

Absent tolling for a timely post-conviction application in state court, the federal limitation barred his claim one year later, April 27, 2009.[1] *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (applying "the 'anniversary method,' under which the limitations period expires on the anniversary of the date it began to run," as "suggested" in *Ferreira v. Sec'y, Dept. of Corr.*, 494 F.3d 1286, 1289 n. 1 (11th Cir.2007)). The deadline passed before Williams filed a post-conviction proceeding that tolled the limitation.[2]

Williams miscalculates the limitation by erroneously calculating the start of the limitation from when the last post-conviction proceeding became final in 2022 instead of — as quoted above under Section 2244(d)(1)(A) — from when the direct appeal concluded in 2008. Also, although in 2020, 2021, and 2022, Williams filed three post-conviction petitions (Respondent's Exhibits 18, 20, and 30), none afforded Williams tolling because, as shown above, the limitation expired about eleven years earlier. "[A] properly and timely filed petition in state court only tolls the time remaining within the

---

[1] Because the deadline was on a Saturday, under Rule 6(a)(1)(C), Federal Rules of Civil Procedure, the deadline is extended to "the next day that is not a Saturday, Sunday, or legal holiday." April 27, 2009, was the next Monday.

[2] While the direct appeal was pending, Williams successfully moved the trial court under Rule 3.800, Florida Rules of Criminal Procedure, to correct sentence. The trial court clarified that the life sentence included a mandatory minimum of twenty-five years. (Respondent's Exhibits 7–9) Also, Williams filed two petitions for the writ of habeas corpus, which were denied. (Respondent's Exhibits 15–17) These proceedings do not affect the limitation because each concluded before the conviction became final in 2008.

federal limitation period." *Tinker v. Moore*, 255 F.3d 1331, 1335 n.4 (11th Cir. 2001). No time remained to toll to allow Williams to file a future federal action.

**Avoidance of Limitation:**

To avoid a dismissal of his action, Williams asserts entitlement to federal review based on "actual innocence," "manifest injustice," and "fundamental miscarriage of justice." Williams argues each as a separate basis for federal review, however, each label applies to the same entitlement to federal review based on factual proof that the convicted person did not commit the crime of conviction. *See, e.g., Sawyer v. Whitley*, 505 U.S. 333, 333 (1992) ("The miscarriage of justice exception applies where a petitioner is 'actually innocent' of the crime of which he was convicted."); *Schlup v. Delo*, 513 U.S. 298, 321 (1995) ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence."); *Schlup*, 513 U.S. at 327 (recognizing that the requirement to show that the constitutional violation has probably resulted in the conviction of someone who is actually innocent "still provid[es a] petitioner a meaningful avenue by which to avoid a manifest injustice."); *House v. Bell*, 547 U.S. 518, 537 (2006) (using both "miscarriage of justice" and "actual innocence" to describe the same basis for federal review). "Actual innocence" is now the most used label to describe this avenue for obtaining federal review.

Williams bears the burden of proving that he did not commit the crime for which he is imprisoned. Although Williams may challenge his conviction if he can show that he is "actually innocent" of the offense, "actual innocence" is not a separate claim that challenges the conviction but a "gateway" through which a defendant may pass to assert an otherwise time-barred or procedurally barred federal claim.[3] Passage through the gateway is difficult because "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. The gateway is narrow and opens "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin, Warden, v. Perkins*, 569 U.S. 383, 401 (2013) (quoting *Schlup*, 513 U.S. at 316).

Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). And as *House*, 547 U.S. at 538 (internal citation omitted), explains, the applicant's "burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt — or, to remove

---

[3] Williams asserts no claim of "actual innocence" as a "free standing" claim, but only as a means of escaping the limitation's bar. The Supreme Court has never recognized the existence of a "free standing" claim. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.") (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993)).

the double negative, that more likely than not any reasonable juror would have reasonable doubt."

As determined above, Williams's application is untimely, but a sufficient showing of "actual innocence" can overcome the limitation bar, as *Perkins*, 569 U.S. at 386 (brackets original), explains:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329, 115 S. Ct. 851; *see House*, 547 U.S. at 538, 126 S. Ct. 2064 (emphasizing that the *Schlup* standard is "demanding" and seldom met).

To determine whether Williams is entitled to the "actual innocence" exception to the limitation, a court must review both the evidence that was presented to the jurors and the "new evidence" that was not presented to the jurors. On direct appeal, *Williams v. State*, 976 So. 2d at 1198–99 (Respondent's Exhibit 12 at 2–3), summarizes the following facts as presented to the jurors:

> On the evening of May 20, 2003, Tampa police officers responded to an apartment after a call from a neighbor concerning a disturbance and the sound of gunshots. Inside the apartment, they found Constance Culbreth stabbed and shot. The police recovered several spent bullet casings from Culbreth's apartment and from the apartment below. Culbreth subsequently died of her injuries, and the police developed her live-in boyfriend, Richard Williams, as the potential perpetrator of the crime.
>
> On the morning of May 21, 2003, the police received a call that someone matching Williams' description was behind a Walgreens drug store. Officer Downes responded to the Walgreens and found a man matching Williams' description curled up on his side beside

> a tree in the parking lot. Because he did not know whether the man was armed, Downes pointed his gun at the man and ordered him to get on his stomach. The man made eye contact with Downes and then blurted out, "I got my gun on me." Downes was able to peaceably secure the man, who turned out to be Williams, and a gun was found on the ground where Williams had been lying. The police took the gun into evidence.
>
> . . . .
>
> Shortly thereafter, Detective John Tindall brought the gun recovered from beneath Williams into the interview room and asked Williams whether the gun was his. Williams responded, "Yeah, that's mine." Tindall then asked Williams whether it was "the firearm you used to shoot Ms. Culbreth with?" Williams looked at Tindall and nodded his head in the affirmative.
>
> No other statements made by Williams were offered into evidence at trial. Instead, the State sought to establish its case through testimony that placed Williams and Culbreth alone in their apartment on the night of the murder and forensic evidence that established that the bullets recovered from Culbreth's body and the bullet casings recovered from her apartment were fired from the gun that Williams had with him when he was arrested. Based on this evidence, the jury found Williams guilty of second-degree murder with a firearm.

Williams recognizes that controlling precedent requires him to present "new evidence" to prove his "factual innocence." (Doc. 21 at 11) Nevertheless, instead of presenting "new evidence," Williams asserts that the gun recovered beside him at his arrest was "planted by T.P.D." (Doc. 21 at 12) Whether the gun was "planted" is both a legal argument that challenges the veracity of the police officers and a defense that he could have presented at trial. In other words, Williams's assertion is neither "new" nor "evidence" of his factual innocence.

Williams contends that his conviction for second-degree murder is both a "fundamental miscarriage of justice" and a "manifest injustice," (Doc. 21 at 13 and 17)

but he again presents neither "new" nor "evidence" of his factual innocence. Williams's contention is based on a faulty premise, specifically, that his conviction for second-degree murder violates due process because his indictment charged only first-degree murder. Williams is correct that the indictment charged only first-degree murder. At the close of the prosecutor's case the defense moved for a judgment of acquittal, arguing that the state failed to prove premeditation. The trial court agreed, granted the motion, and allowed the case to proceed on the lesser-included offense of second-degree murder. (Respondent's Exhibit 33 at 304) Contrary to his contention, Williams was not entitled to a complete dismissal of the prosecution. "[S]econd-degree murder . . . *is* a necessary lesser included offense for premeditated murder[, and, [a]ccording, an instruction on second-degree murder was required." *Chavers v. State*, 115 So. 3d 1017, 1020 (1st DCA 2013) (italics original). *See also United States v. Jones*, 906 F.3d 1325, 1329 (11th Cir. 2018) ("The only meaningful difference between first- and second-degree murder in Florida is that first-degree murder requires the element of premeditation, while second-degree murder does not."). Williams's right to due process was not violated based on the indictment not charging both first-degree and second-degree murder. *United States v. Dennis*, 26 F.4th 922, 928 (11th Cir. 2022) (Due process "in criminal prosecutions does not require the specific identification of lesser included offenses in charging instruments if the greater offense is adequately identified and explained."). Williams fails to prove entitlement to a review on the merits of his untimely application.

Williams's application (Doc. 1) is **DISMISSED AS TIME-BARRED**. The clerk must enter a judgment against Williams and **CLOSE** this case.

### DENIAL OF BOTH
### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Williams is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Williams must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because the application is clearly time-barred, Williams is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Williams must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on July 1, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE